REQUESTED BY: Senator Douglas Kristensen
You have written to me to obtain my "thoughts on some issues concerning LB422." In your letter you say that you are not requesting a formal written opinion from my office.
It has been the practice of the Attorney General's Office under at least the last three Attorneys General not to give a private Attorney General's opinion to an individual Senator. It is my understanding that the reason for this policy was insistence by members of the Legislature that all Senators have access to the same legal information regarding a legislative bill at approximately the same time. Indeed, to this day, the Clerk of the Legislature is insistent that Attorney General's opinions to members of the Legislature be promptly provided to his office so that they may be shared with the entire Legislature as expeditiously as possible.
By the same token, because of the importance of the issues involved and the possibility of mis-communication through verbal means, an oral response would not be appropriate for the important questions which you have raised.
Accordingly, I am responding to your questions in the context of this formal Attorney General's opinion which will be shared equally with your colleagues by the Clerk of the Legislature.
You first ask whether LB422 as amended is unconstitutionally vague. In my opinion, LB422 as amended is not unconstitutionally vague. I will provide you with a more extended analysis of this question if you so desire and if the schedule of the Legislature permits.
You next ask whether LB422 "weakens or confuses Nebraska's death penalty statutes." The answer is yes. Under LB422 as amended, the death penalty may never be applied to a person who is "mentally retarded." Under current law, "mental defect" which includes mental retardation, is a mitigating circumstance already required to be weighted by the court when determining a sentence. However, "mental retardation" is not presently an outright bar to imposition of the death penalty. Under current law, the important question is "the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law."
Under LB422 as amended, a mentally retarded person whounderstands that it is wrong to kill and who has the mental capacity to stop himself from killing, but who kills a dozen young children at a fast-food restaurant with a semi-automatic weapon, could not be subject to the death penalty.
In LB422 as amended, mentally retarded is defined as "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior." It is probably fair to say that many killers, whether mentally retarded or not, have deficits in their adaptive behavior. The question then is what is "significantly subaverage general intellectual functioning?" LB422 tells us that an intelligence quotient of 70 or below is presumptive evidence of mental retardation. However, someone with an intelligence quotient of 90, who understood that murder is wrong, and who had the ability to stop himself from murdering, could still be found "mentally retarded" and would not be eligible for the death penalty.
If LB422 is passed in its current form, it is likely that we will see men like triple killers John Lotter and Clarence Victor arguing that even though they knew that murder was wrong and could have stopped themselves from all of their killings, they are now exempted from the death penalty. Whether they will be successful with their arguments, of course, remains to be seen, but there is every reason to believe the State of Nebraska will have to suffer through additional years of litigation to know the answer.
Aggravating circumstance (1)(a) in LB422 refers to "prior
history." On the one hand, the court may view this insertion of the word "prior" as a simple redundancy since, by definition, history is events which have occurred in the past. On the other hand, this provision might be applied to the following situation. Assume a murder is committed and the defendant, subsequent to the murder, rapes several women, robs several convenience stores, shoots but does not kill several additional persons in separate incidents, and at the end of this crime spree, is captured. In that circumstance, the court might interpret "prior history" to mean that none of these subsequent activities could be considered for purposes of aggravating circumstance (1)(a).
Aggravator (1)(b) has been amended in LB422 to read as follows, "The murder was committed in an effort to conceal the commission of a crime or to conceal the identity of the perpetrator of such crime." It is not completely clear whether "such" refers to the murder or another crime. This could be an important difference. For example, assume the defendant first raped a woman. She reports that crime and the defendant is arrested and subsequently released on bail. While on bail, the defendant shoots the victim, whom he had previously sexually assaulted, and is never seen by the victim in the course of the murder. If the words "such crime" refer only to the murder, aggravator (1)(b) would not apply to that situation because the murder was not committed to conceal who committed the murder, it was committed to conceal who committed the sexual assault. If the words "such crime" refer to the earlier sexual assault, then aggravator (1)(b) would apply. The existing statute refers to "a" crime and under that statute, aggravator (1)(b) would clearly apply to the hypothetical just stated.
Aggravator (1)(h) is amended to provide that the "murder was committed knowingly to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws." Previously the statute had referred to the crime being committed to disrupt or hinder, etc. Assume that a person disgusted with the Legislature plants a bomb in the legislative chamber set to explode at 2:00 a.m. when no one is expected to be in the Capitol building. Unfortunately, one diligent Senator is working very late in the chamber and is killed in the explosion. Here, the bomb was exploded in an effort to disrupt the exercise of a government function (the convening of the Legislature the next day), but the murder was not. Therefore, aggravator (1)(h) might not apply under the new language whereas under the existing language, it would. On the other hand, these facts would constitute a felony murder and if the word "murder" were interpreted to include felony murder, aggravator (1)(h) would still apply.
You next ask about LB422 resulting in "additional appeals." While LB422 might in some circumstances lead to additional legal arguments in the numerous appeals being filed, and might let killers like Clarence Victor off death row if they can convince a court that they are "mentally retarded," it does not change the number of appeals available. Indeed, the biggest problem we have with the death penalty in Nebraska today is that there is literally no limit to the number of "appeals" (actually post-conviction proceedings) that may be filed.
Considering all of the foregoing, I would make two recommendations to the Legislature concerning LB422. First, I would strike all of the amendments to existing law made by the bill except Senator Matzke's provision which adds aggravating circumstance (1)(i) relating to the victim being a law enforcement officer. Second, and very importantly, I wouldfurther amend LB422 to limit the number of state post-convictionproceedings to one round. Until that is done, it will remaineffectively impossible to carry out any additional capitalsentences in the State of Nebraska.
In your letter you state, "Additional appeals would further delay the imposition of the death penalty, and create a greater strain on the state's judicial and financial resources." It is for that reason that I strongly urge you and the other members of the Legislature to amend LB422 to limit to one the number of state post-conviction proceedings allowed by Nebraska law.[1]
Yours truly,
 Don Stenberg Attorney General
DS:bs cc: Clerk of the Legislature
[1] Neither the federal nor the state constitution require that the state provide any state post-conviction proceedings.